UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| AMERICAN BUILDERS INSURANCE COMPANY, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO._____ |
| PETERSON CONSTRUCTION, INC., MCALLEN STRATEGIC GROUP, LLC, MCALLEN CONVENTION CENTER HOTEL, LLLP, THE HANOVER AMERICAN INSURANCE COMPANY, THE HANOVER INSURANCE COMPANY, MIGUEL PALACIOS, AND MARIA MARTINEZ, | § § § § § § § § § | |
| *Defendants.* | § § | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Pursuant to 28 U.S.C. § 2201, plaintiff American Builders Insurance Company ("ABIC") files this Complaint for Declaratory Judgment against Peterson Construction, Inc., McAllen Strategic Group, LLC and McAllen Convention Center Hotel, LLLP (the "McAllen Defendants"), Miguel Palacios, and Maria Martinez (collectively, "Plaintiffs"), and respectfully requests that this Court issue a declaration as to ABIC's rights and obligations under the policies of insurance issued by ABIC to Peterson Construction, Inc. ("Peterson Construction"), as well as ABIC's rights and obligations with regard to coverage issues by, between and among ABIC and the McAllen Defendants with respect to the primary insurance policy issued by The Hanover American Insurance Company and the excess insurance policy issued by The Hanover Insurance Company (collectively, "Hanover") to the McAllen Defendants.

The following exhibits are being filed with this Complaint for Declaratory Judgment with references to the exhibits also including the page number of the specific page referenced as (000):

| Exhibit | Description | Page Numbers |
|---------|-------------|--------------|
| A | ABIC policy number PKG 0101249 06 ("CGL Primary Policy") issued to Peterson Construction, Inc. | 001-156 |
| B | ABIC policy number UMB 0123705 05 ("Umbrella Policy") issued to Peterson Construction, Inc. | 157-220 |
| C | Third Amended Petition filed by the Palacios Plaintiffs ("Petition") | 221-228 |
| D | Hanover American Insurance Company policy number ZZK A915504 issued to first named insured, O'Reilly Hospitality Management LLC (the "Hanover Primary Policy") | 229-401 |
| E | The Hanover Insurance Company policy number UHK A915441 00 issued to first named insured, O'Reilly Hospitality Management, LLC (the "Hanover Excess Policy") | 402-446 |
| F | General Contract | 447-482 |
| G | Subcontract | 483-492 |
| H | Shane Linder Deposition Excerpts taken on November 15, 2019 | 493-498 |
| I | Miguel Palacios Deposition Excerpts taken on November 20, 2019 | 499-503 |

In support of its request for declaratory relief, ABIC respectfully shows the Court as follows:

## NATURE OF THE SUIT

1.       This matter involves an insurance coverage dispute arising out of a lawsuit filed on June 21, 2017, by Miguel Palacios and Maria Martinez (collectively, the "*Palacios* Plaintiffs") in the 389th Judicial District Court for Hidalgo County, Texas (the "Underlying Lawsuit") relating to injuries Mr. Palacios sustained on July 11, 2016 in connection with his work applying an exterior insulation and finishing system ("EIFS") as part of the construction of the Cambria Hotel & Suites (the "Project") in McAllen, Texas.  The *Palacios* Plaintiffs named as defendants to the Underlying Lawsuit Peterson Construction, McAllen Strategic Group ("McAllen Strategic Group"), and McAllen Convention Center Hotel, LLLP ("McAllen Convention Center Hotel, LLLP" and, together with McAllen Strategic Group, the "McAllen Defendants").

2.      ABIC is presently defending Peterson Construction and the McAllen Defendants in the Underlying Lawsuit and seeks a declaration of its legal rights and obligations under two insurance policies it issued to Peterson Construction (and under which the McAllen Defendants claim additional insured status) with respect to the claims asserted by the *Palacios* Plaintiffs in the Underlying Lawsuit.[1]  Specifically, ABIC seeks a declaration that it has no duty to defend or indemnify Peterson Construction or the McAllen Defendants in connection with the claims asserted by the *Palacios* Plaintiffs in the Underlying Lawsuit because the ABIC policies exclude coverage for the claims at issue in the Underlying Lawsuit.  ABIC also seeks a declaration as to the additional insured status of McAllen Strategic Group and as to ABIC's indemnity obligation, if any, in favor of the McAllen Defendants.  Finally, if the Court determines that ABIC does have an obligation to either or both of the McAllen Defendants in the Underlying Lawsuit, ABIC seeks a declaration as to the nature of its obligations in conjunction with the policies that Hanover issued to the McAllen Defendants.[2]

### THE PARTIES

3.      Plaintiff American Builders Insurance Company is a Delaware corporation with its principal place of business in Atlanta, Georgia.

---

[1]      A true and correct copy of ABIC policy number PKG 0101249 06 ("CGL Primary Policy") issued to Peterson Construction, Inc. is attached hereto as Exhibit A; a true and correct copy of ABIC policy number UMB 0123705 05 ("Umbrella Policy") issued to Peterson Construction, Inc. is attached hereto as Exhibit B; and a true and correct copy of the Third Amended Petition filed by the *Palacios* Plaintiffs ("Petition") is attached hereto as Exhibit C.

[2]      A copy of Hanover American Insurance Company policy number ZZK A915504 issued to first named insured, O'Reilly Hospitality Management LLC (the "Hanover Primary Policy"), is attached hereto as Exhibit D, and a copy of The Hanover Insurance Company policy number UHK A915441 00 issued to first named insured, O'Reilly Hospitality Management, LLC (the "Hanover Excess Policy") is attached hereto as Exhibit E.

4.      Defendant Peterson Construction, Inc. is a Texas corporation with its principal places of business in Frisco and McAllen, Texas.  It may be served through its registered agent for service of process: Thomas Peterson at either its office located at 7888 Constance Avenue, Frisco, Texas 75034 or its office located at 808 East Violet, McAllen, Texas, 78504.

5.      Defendant McAllen Strategic Group, LLC is a foreign limited liability company authorized to do and doing business in Texas.  It may be served through its registered agent for service of process: Corporation Service Company, 251 Little Falls Drive, Wilmington, DE, 19808.

6.      Defendant McAllen Convention Center Hotel, LLLP is a foreign limited liability limited partnership authorized to do and doing business in Texas. McAllen Convention Center Hotel, LLLP can be served through its registered agent for service of process: Corporation Service Company, 251 Little Falls Drive, Wilmington, DE, 19808.

7.      Defendant The Hanover American Insurance Company is a New Hampshire corporation with its principal place of business in Worcester, Massachusetts.  It may be served through its registered agent for service of process:  CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

8.      Defendant The Hanover Insurance Company is a New Hampshire corporation with its principal place of business in Worcester, Massachusetts.  It may be served through its registered agent for service of process:  CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

9.      Defendant Miguel Palacios is a resident of Pharr, Texas.  He may be served at 609 North Aster Street, Pharr, Texas, 78577, or wherever he may be found.

10.      Defendant Maria Martinez is a resident of Pharr, Texas.  She may be served at 609 North Aster Street, Pharr, Texas, 78577, or wherever she may be found.

## JURISDICTION AND VENUE

11.     ABIC seeks declarations regarding insurance coverage pursuant to 28 U.S.C. §2201 and pursuant to Federal Rule of Civil Procedure 57.

12.     This Court has original diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs, and complete diversity exists between plaintiff ABIC and the Defendants.

13.     Plaintiff ABIC is a Delaware corporation with its principal place of business in Georgia.   Therefore, ABIC is a citizen of Delaware and Georgia for purposes of diversity jurisdiction.

14.     Defendants Miguel Palacios and Maria Martinez are natural persons who are citizens of Texas.

15.     Defendant Peterson Construction, Inc. is a corporation organized under the laws of the state of Texas and has its principal place of business in Texas.  As such, Peterson Construction, Inc. is a citizen of Texas for purposes of diversity jurisdiction.

16.     Defendant McAllen Strategic Group, LLC is a limited liability company.  Its sole member is Timothy O'Reilly.  Mr. O'Reilly is a citizen of Springfield, Missouri.  As such, McAllen Strategic Group is a citizen of Missouri for purposes of diversity jurisdiction.

17.     Defendant McAllen Convention Center Hotel, LLLP is a limited liability limited partnership.  Its partners are defendant McAllen Strategic Group, LLC and MSG, LP, LLC. McAllen Strategic Group, LLC's sole member is Timothy O'Reilly, a citizen of Missouri.  MSG, LP, LLC's sole member is also Timothy O'Reilly, a citizen of Missouri.  As such, McAllen Convention Center Hotel is a citizen of Missouri for purposes of diversity jurisdiction.

18.     Defendant The Hanover American Insurance Company is a New Hampshire stock company.  Its principal place of business is Worcester, Massachusetts.  As such, The Hanover

American Insurance Company is a citizen of New Hampshire and Massachusetts for purposes of diversity.

19.     Defendant The Hanover Insurance Company is incorporated in the State of New Hampshire with its principal place of business in Worcester, Massachusetts.  As such, The Hanover American Insurance Company is a citizen of New Hampshire and Massachusetts for purposes of diversity.

20.     The amount in controversy in this case, exclusive of interest and costs, exceeds $75,000.  The *Palacios* Plaintiffs seek in the Underlying Lawsuit monetary relief in excess of $1,000,000 as a result of injuries sustained by Mr. Palacios as a result of a workplace accident.[3]

21.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 124(c)(3) because ABIC's first named insured, Peterson Construction, is a resident of and has offices in Frisco, Collin County, Texas, a county embraced by the Eastern District of Texas, and the Sherman Division in particular (Plano court location).

## FACTS

**A.     The ABIC Commercial General Liability Policy**

22.     ABIC issued policy number PKG 0101249 06 to Peterson Construction for the period of April 1, 2016 to April 1, 2017, which policy provides, in relevant part, commercial general liability coverage (the "CGL Primary Policy").  The commercial general liability coverage part of the CGL Primary Policy has a $1,000,000 each occurrence limit.

23.     The Insuring Agreement of the CGL Primary Policy coverage form sets forth ABIC's defense and indemnity obligations and states, in pertinent part:

---

[3]     Exhibit C, Petition, at ¶ 2 (221).

SECTION I – COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.      Insuring Agreement

    a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" **to which this insurance applies**. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, **we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply**. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.[4]

24.     The CGL Primary Policy contains an exclusionary endorsement entitled Exclusion – Exterior Insulation and Finish Systems (the "EIFS Exclusion").[5]  The broad EIFS endorsement excludes coverage for bodily injury in any way arising out of, caused by, or attributable to an EIFS-clad exterior and states:

    This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

    **1.**      The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

---

[4]      Exhibit A, CGL Primary Policy, at Commercial General Liability Coverage Form, Section I – Coverages, Coverage A – Bodily Injury and Property Damage Liability, a. (emphasis added) (087).

[5]      *See* Exhibit A, CGL Primary Policy, at Exclusion – Exterior Insulation and Finish Systems (Form CG 21 86 12 04) (126).

**2.**     "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of the structure containing that component, fixture or feature.

25.     The EIFS endorsement provides the following definition for an exterior insulation and finish system ("EIFS"):

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

1.     A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

2.     The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

3.     A reinforced or unreinforced base coat;

4.     A finish coat providing surface texture to which color may be added; and

5.     Any flashing, caulking or sealant used with the system for any purpose.[6]

26.     The EIFS Exclusion was specifically called to the attention of Peterson Construction (and any other recipient of the CGL Primary Policy) through a separate disclosure of the EIFS Exclusion, which states:

**TEXAS DISCLOSURE TO POLICYHOLDERS
PLEASE READ THIS DISCLOSURE TO
POLICYHOLDERS CAREFULLY**

**EXCLUSION – EXTERIOR INSULATION AND
FINISH SYSTEMS**

American Builders Insurance Company and National Builders Insurance Company by attaching this notice to your policy advises you that this policy contains changes to the policy terms, conditions and coverages which were negotiated with you. You have agreed to

---

[6]     *Id*. (126)

the changes made by this endorsement in the terms, conditions and coverages provided by your General Liability policy.

The insurance provided by this policy has been modified by endorsement **CG 21 86 EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS** which includes limitations or exclusions to your General Liability coverage. Please read this endorsement carefully.[7]

27.     The CGL Primary Policy also contains an endorsement entitled Exclusion – Designated Work (the "Designated Work Exclusion"), which modifies the insurance provided under the CGL Primary Policy by excluding from coverage bodily injury arising out of work on structures exceeding three (3) stories in height.  The endorsement states, in pertinent part:

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.[8]

28.     The Designated Work Exclusion includes its own Schedule that identifies the work excluded from coverage by the Designated Work Exclusion.  The Schedule describes such work, in part, as:

**Description of your work**:

(1)     Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction or replacement of any structure, not otherwise excluded by this endorsement, which exceeds (3) stories. This does not apply to "bodily injury" or "property damage" arising out of "your work" performed within a structure.

---

[7]     *See* Exhibit A, CGL Primary Policy, at EIFS Disclosure (Form: GL TX EIFS – PH 06 15). Further, Peterson Construction declined EIFS coverage as part of its application materials when seeking insurance coverage from ABIC (150).

[8]     *See* Exhibit A, CGL Primary Policy, at Exclusion – Designated Work (Form: GL EDW 06 10) (142).

29.     As amended by endorsement, Section II – Who Is An Insured of the CGL Primary

Policy affords additional insured status to:

1. Any person or organization for whom you are performing
   operations when you and such person or organization have
   agreed in writing in a contract or agreement that such person or
   organization be added as an additional insured on your policy;
   and

2. Any other person or organization you are required to add as an
   additional insured under the contract or agreement described in
   Paragraph **1.** above.[9]

   Such person(s) or organization(s) is an additional insured only with
   respect to liability for "bodily injury", "property damage" or
   "personal and advertising injury" caused, in whole or in part, by:

   **(a)** Your acts or omissions; or

   **(b)** The acts or omissions of those acting on your behalf;

   in the performance of your ongoing operations for the additional
   insured.

   However, the insurance afforded to such additional insured
   described above:

   **(a)** Only applies to the extent permitted by law; and

   **(b)** Will not be broader than that which you are required by
   the contract or agreement to provide for such additional
   insured.

   A person's or organization's status as an additional insured under
   this endorsement ends when your operations for the person or
   organization described in Paragraph **1.** above are completed.

30.     Pursuant to the CGL Primary Policy's Limits of Insurance, as amended by

endorsement, the most ABIC is obligated to pay on behalf of the additional insured is the lesser of

---

[9]     Exhibit A, CGL Primary Policy, at Commercial General Liability Coverage Form, Section II –
Who Is An Insured, as amended by General Liability Extra Coverage Endorsement (Form: BIG
GLECE 04 13) (104-105).

the amount of insurance required to be provided by the contract or agreement or the amount available under the applicable Limits of Insurance shown in the CGL Primary Policy's Declarations.[10]

## B.     The ABIC Umbrella Policy

31.     ABIC also issued umbrella liability policy number UMB 0123705 05 to Peterson Construction for the period of April 1, 2016 to April 1, 2017 (the "Umbrella Policy").   The Umbrella Policy has limits of $3,000,000 each occurrence with an aggregate limit of $3,000,000.

32.     The Insuring Agreement of the Umbrella Policy sets forth ABIC's defense and indemnity obligations under the Umbrella Policy and states, in relevant part:

> We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" **to which this insurance applies**. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. **However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply**.[11]

33.     The Umbrella Policy defines "retained limit" to mean "the available limits of 'underlying insurance' scheduled in the Declarations or the 'self-insured retention', whichever

---

[10]     Exhibit A, CGL Primary Policy, at Commercial General Liability Coverage Form, Section III – Limits of Insurance, as amended by General Liability Extra Coverage Endorsement (Form: BIG GLECE 04 13) (105).

[11]     Exhibit B, Umbrella Policy, at Commercial Liability Umbrella Coverage Form, Section I – Coverages, Coverage A – Bodily Injury and Property Damage Liability, 1. Insuring Agreement, a. (Form: CU 00 01 04 13) (emphasis added) (167).

applies,"[12] and the CGL Primary Policy qualifies as "underlying insurance" under the Umbrella Policy.[13]

34.     Coverage under the Umbrella Policy is modified by the Following Form Endorsement, which excludes from coverage under the Umbrella Policy any liability not covered by valid and collectible underlying insurance:

> THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:
>
> **COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM**
>
> The following exclusion is added to Paragraph 2. **Exclusions** of Section **I - Coverage A - Bodily Injury And Property Damage Liability**, and to Paragraph 2. **Exclusions** Section **I, Coverage B - Personal and Advertising Injury Liability:**
>
> **2. Exclusions:**
>
> This insurance does not apply to:
>
> "Bodily injury" … unless such liability is covered by valid and collectable "underlying insurance" as listed in the Schedule of Underlying Insurance for the shown, and then only for such liability for which coverage is provided under the "underlying insurance."[14]

35.     Additional insured status under the Umbrella Policy is afforded to any additional insured under any policy of underlying insurance.[15]

36.     The Umbrella Policy contains an Other Insurance clause, which states:

> **5.  Other Insurance**
>
> **a.**  This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other

---

[12]     Exhibit B, Umbrella Policy, at Commercial Liability Umbrella Coverage Form, Section V – Definitions, 19 (183).

[13]     *See* Exhibit B, Umbrella Policy, at Retained Limit (Form: UMB DEC 05 15) (158).

[14]     Exhibit B, Umbrella Policy, at Following Form Endorsement (Form: UMB GFF 05 11) (208).

[15]     Exhibit B, Umbrella Policy, at Commercial Liability Umbrella Coverage Form, Section II – Who Is An Insured, 3 (176).

basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

*  *  *

**b.** When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of the insurance provided under this Coverage Part; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.[16]

## C.   The Hanover Policies

37.     The Hanover American Insurance Company issued policy number ZZK A915504 to first named insured, O'Reilly Hospitality Management LLC, for the period of May 1, 2016 to May 1, 2017, which policy provides, in relevant part, commercial general liability coverage (the "Hanover Primary Policy").   Based on information and belief, the McAllen Defendants are insureds under the Hanover Primary Policy.   The Hanover Primary Policy has a $1,000,000 each occurrence limit and includes coverage for a location in Plano, Texas.[17]

38.     The Hanover Insurance Company issued policy number UHK A915441 00 to first named insured, O'Reilly Hospitality Management, LLC, for the policy period May 1, 2016 to May 1, 2017, which policy provides, in relevant part, follow form excess and umbrella liability coverage (the "Hanover Excess Policy").[18]   Based on information and belief, the McAllen Defendants are

---

[16]     Exhibit B, Umbrella Policy, at Commercial Liability Umbrella Coverage Form, Section IV – Conditions, 5. Other Insurance (179).

[17]     Exhibit D, Hanover Primary Policy, at Common Declarations, Location 4 (Form: 401-0151 01/05) (239) and at Commercial General Liability Coverage Part Declaration (Form: 421-0340 12/14) (245).

[18]     Exhibit E, Hanover Excess Policy, at Declarations (Form: 475-0002 12 14) (407).

insureds under the Hanover Excess Policy.  The Hanover Excess Policy has a $25,000,000 each occurrence limit.[19]

**D.      The Cambria Hotel Project**

39.      On or about November 23, 2015, Peterson Construction, as the general contractor, entered into an AIA Standard Form of Agreement between Owner and Contractor (the "General Contract") with the McAllen Convention Center Hotel for the construction of the Cambria Hotel and Suites (the "Project").  The General Contract requires the installation of an EIFS water-drainage exterior insulation and finish system, specification number 072419.[20]

40.      On or about December 14, 2015, Peterson Construction entered into a Subcontract for Labor and Material (the "Subcontract") with Eagle Masonry, LLC ("Eagle Masonry"). The Subcontract requires Eagle Masonry to "[p]rovide all material, labor, supervision and equipment to complete all EIFS, CMU, stone veneer and wall coping."[21]  The Subcontract also provides that Eagle Masonry:

> shall without limitation furnish and pay for all materials, labor, supervision, scaffolding, equipment, tools, appliances, transportation, storage, sales tax, taxes, permits and everything necessary to fully complete THE WORK in accordance with project plans and specifications….[22]

41.      The Subcontract specifies that the scope of work to be performed by Eagle Masonry includes Water Drainage EIFS specification number 072419, as referenced in the General Contract, and further specifies that the "[w]all panels shown on plan are to be done in EIFS with control lines as per plan elevations."[23]

---

[19]      *Id.* (407).

[20]      A copy of the General Contract is attached as Exhibit F (468).

[21]      A copy of the Subcontract is attached as Exhibit G (483).

[22]      Exhibit G, Subcontract (483).

[23]      *Id* (483).

42.     On July 11, 2016, Mr. Palacios – an employee of Eagle Masonry –  was injured arising from his work applying an EIFS to the Project building.

**E.     The Underlying Lawsuit**

43.     On June 21, 2017, the *Palacios* Plaintiffs filed the Underlying Lawsuit against Peterson Construction.[24]

44.     On July 17, 2017, the *Palacios* Plaintiffs filed their First Amended Petition naming the McAllen Defendants as defendants to the Underlying Lawsuit.   The *Palacios* Plaintiffs amended their pleadings twice more in the Underlying Lawsuit, with the operative pleading at the time of the filing of this Complaint being the *Palacios* Plaintiffs' Third Amended Petition.

45.     The *Palacios* Plaintiffs allege in the Underlying Lawsuit that:

> On the date of his injury, [Mr. Palacios] **was directed to apply foam boards to the east side of the building**. The work required Plaintiff to work on scaffolding **several floors above the ground**, but Plaintiff was provided with no fall protection or other safety equipment and no safety training. Further, the scaffolding and the ladders used to access it were unsafe and unfit and in violation of industry safety standards.[25]

46.     The *Palacios* Plaintiffs have asserted causes of action against Peterson Construction and the McAllen Defendants for premises liability and negligence based on numerous alleged failures of Peterson Construction and the McAllen Defendants, including "failing to ensure that Plaintiff was properly trained for the work he was doing."[26]

47.     The *Palacios* Plaintiffs allege that Mr. Palacios was a business invitee on the Project site at the time of the accident and that Peterson Construction and the McAllen Defendants

---

[24]     The Original Petition filed by the *Palacios* Plaintiffs also named as a defendant Milburn-Oberfeld Hospitality, LLC.  The *Palacios* Plaintiffs nonsuited their claims against this entity (221).

[25]     Exhibit C, Petition, at ¶ 9 (emphasis added) (222).

[26]     Exhibit C, Petition, at Counts VI ¶ 13(g) (224).

knew or should have known that the condition on the premises created an unreasonable risk of harm to invitees because they failed to provide safe scaffolding and ladders, safety equipment, safety training, or warnings of the purportedly dangerous condition.[27]

48.     The *Palacios* Plaintiffs also allege that Peterson Construction and the McAllen Defendants failed to exercise ordinary care in hiring Eagle Masonry as a subcontractor for the Project, "did nothing to evaluate Eagle Masonry LLC's experience of specific planning" for the Project, "failed to provide a safety plan to Eagle Masonry, and failed to ensure that Eagle Masonry had its own site-specific safety plan…."[28]

49.     The *Palacios* Plaintiffs allege that Mr. Palacios sustained "numerous injuries, including skull fractures, ruptured vertebrae, broken ribs and clavicles" and that he suffers from permanent thoracic paraplegia and mental disorders as a result of the accident.[29]  Mr. Palacios seeks to recover in the Underlying Lawsuit for his past and future medical expenses, pain and mental anguish, physical impairment, disfigurement, lost wages, and loss of earning capacity.[30]

50.     Ms. Martinez, who is alleged to be the wife of Mr. Palacios, also seeks to recover for loss of consortium and loss of services.[31]

51.     Mr. Palacios and Ms. Martinez seek monetary relief in excess of $1,000,000 and also seek to recover exemplary damages pursuant to Chapter 41 of the Texas Civil Practice and

---

[27]     Exhibit C, Petition, at ¶ 18 (225).

[28]     Exhibit C, Petition, at ¶ 12 (223-224)

[29]     Exhibit C, Petition, at ¶ 21 (226).

[30]     Exhibit C, Petition, at ¶ 21 (226).

[31]     Exhibit C, Petition, at ¶ 22 (226-227).

Remedies Code as a result of the alleged gross negligence of Peterson Construction and the McAllen Defendants.[32]

52.      ABIC is presently providing a defense to its named insured, Peterson Construction, and to the McAllen Defendants, as additional insureds, in connection with the Underlying Lawsuit pursuant to a reservation of rights.  ABIC now seeks a declaration from this Court that it has no duty to defend nor to indemnify Peterson Construction and the McAllen Defendants in connection with the Underlying Lawsuit.

### COUNT I:
### Declaratory Judgment on Duty to Defend and Indemnify Under CGL Primary Policy

53.      ABIC incorporates paragraphs 1 through 52 as if re-stated herein *in extenso*.

54.      Both the General Contract and the Subcontract require the installation of EIFS – water-drainage exterior insulation and finish system specification number 072419. The Subcontract also mandates that "[w]all panels shown on plan are to be done in EIFS with control lines as per plan elevations."[33]  These contracts are referenced in the pleadings of the Underlying Lawsuit and incorporated into those pleadings.[34]

55.      In the Underlying Lawsuit, the *Palacios* Plaintiffs allege bodily injury arising out of the construction, installation, and/or application of EIFS, or a part thereof.  Specifically, the *Palacios* Plaintiffs allege that Mr. Palacios "was directed to apply foam boards to the east side of

---

[32]      Exhibit C, Petition, at ¶¶ 2, 20 (221, 226).

[33]      Exhibits F, General Contract, and G, Subcontract.  The portions of these documents cited herein relate solely to the scope of work as it pertains to EIFS and, as such, address solely a fundamental issue of coverage and not any facts that overlap with the merits of or engage the truth or falsity of any facts alleged by the *Palacios* Plaintiffs (468, 483).

[34]      *See* Exhibit C, Petition, at ¶¶ 12, 15 (223-225).

the building." [35]   According to the *Palacios* Plaintiffs, the alleged breaches of duties owed to Mr. Palacios include "failing to ensure that Plaintiff was properly trained for the work he was doing,"[36] *i.e.*, EIFS application and installation.

56.     Though the *Palacios* Plaintiffs do not reference EIFS by name or in detail, the use of foam boards is a characteristic of EIFS, both as defined by the CGL Primary Policy and under the common definition of EIFS.  Further, representatives of Peterson Construction have testified in depositions in the Underlying Lawsuit that Eagle Masonry was performing EIFS work on the Project building.

57.     The EIFS Exclusion bars coverage for bodily injury "arising out of, caused by, or attributable to, whether in whole or in part … [the] construction, … installation, application, [or] maintenance … of any 'exterior insulation and finish system' or any part thereof." [37]   Because the *Palacios* Plaintiffs allege bodily injury arising out of the installation and/or application of EIFS, or a part thereof, the EIFS exclusion applies to bar coverage for the claims against Peterson Construction and the McAllen Defendants in the Underlying Lawsuit.

58.     The Designated Work Exclusion of the CGL Primary Policy excludes from coverage bodily injury "[a]rising out of the … manufacture, construction, fabrication, [or] repair … of any structure, not otherwise excluded by this endorsement, ***which exceeds (3) stories***."[38]

---

[35]     Exhibit C, Petition, at ¶ 9 (emphasis added) (222).

[36]     Exhibit C, Petition, at Counts VI , ¶ 13(g) (224).

[37]     *See* Exhibit A, CGL Primary Policy, at Exclusion – Exterior Insulation and Finish Systems (Form: CG 21 86 12 04) (126).

[38]     *See* Exhibit A, CGL Primary Policy, at Exclusion – Designated Work (Form: GL EDW 06 10) (emphasis added).  The Designated Works Exclusion does not apply to bodily injury arising out of such work "performed within a structure." (142)

59.     The Cambria Hotel is a four-story structure.[39]

60.     The *Palacios* Plaintiffs allege that "[t]he work required Plaintiff to work on scaffolding **several floors above the ground**…."[40]

61.     More particularly, at the time of the incident that gives rise to the Underlying Lawsuit, Mr. Palacios was installing part of an EIFS on the exterior of the fourth-floor level of the Project as part of the manufacture, construction, fabrication, and/or repair of the Cambria Hotel.[41] Accordingly, the Designated Work Exclusion applies to preclude coverage under the CGL Primary Policy for the claims asserted by the *Palacios* Plaintiffs in the Underlying Lawsuit.

62.     Pursuant to 28 U.S.C. § 2201, ABIC seeks a declaration that it has no duty under the CGL Primary Policy to defend Peterson Construction or the McAllen Defendants in connection with the Underlying Lawsuit.

63.     The same reasons that negate a duty to defend on the part of ABIC under the CGL Primary Policy also negate any possibility that ABIC will ever have a duty to indemnify Peterson Construction or the McAllen Defendants under the CGL Primary Policy.  As such, this Court may properly issue declaratory relief as to the issue of indemnity, and, pursuant to 28 U.S.C. § 2201, ABIC seeks a declaration that it has no duty under the CGL Primary Policy to indemnify Peterson Construction or the McAllen Defendants in connection with the Underlying Lawsuit.

---

[39]     *See* Exhibit H, Excerpt of Deposition of Shane Linder (Project Manager for Peterson Construction), at 140:1-2.  The portions of this exhibit cited herein relate solely to the scope of work as it pertains to EIFS and the number of stories of the Project and, as such, address solely a fundamental issue of coverage and not any facts that overlap with the merits of or engage the truth or falsity of any facts alleged by the *Palacios* Plaintiffs (495).

[40]     Exhibit C, Petition, at ¶ 9 (emphasis added) (222)

[41]     *See* Exhibit H, Excerpt of Deposition of Shane Linder, at 139:21-140:11 (494-495); *see also* Exhibit I, Excerpt of Deposition of Miguel Palacios, at 19:1-7 (500).

## COUNT II:
## Declaratory Judgment on Duty to Defend and Indemnify Under Umbrella Policy

64.     ABIC incorporates paragraphs 1 through 63 as if re-stated herein *in extenso*.

65.     The Umbrella Policy's Following Form Endorsement excludes from coverage under the Umbrella Policy any liability for bodily injury not covered by valid and collectible underlying insurance.[42]

66.     As set forth herein, supra, the underlying insurance – namely, the CGL Primary Policy – does not provide coverage for the liability (if any) of Peterson Construction or the McAllen Defendants in connection with the Underlying Lawsuit.  As such, the Following Form Endorsement applies to preclude coverage under the Umbrella Policy for the Underlying Lawsuit.

67.     Pursuant to 28 U.S.C. § 2201, ABIC seeks a declaration that it has no duty under the Umbrella Policy to defend Peterson Construction or the McAllen Defendants in connection with the Underlying Lawsuit.

68.     The same reasons that negate a duty to defend on the part of ABIC under the Umbrella Policy also negate any possibility that ABIC will ever have a duty to indemnify Peterson Construction or the McAllen Defendants under the Umbrella Policy.  As such, this Court may properly issue declaratory relief as to the issue of indemnity, and, pursuant to 28 U.S.C. § 2201, ABIC seeks a declaration that it has no duty under the Umbrella Policy to indemnify Peterson Construction or the McAllen Defendants in connection with the Underlying Lawsuit.

## COUNT III:
## Declaratory Judgment on Duty to Defend and Indemnify Alleged Additional Insured

69.     ABIC incorporates paragraphs 1 through 68 as if re-stated herein *in extenso*.

---

[42]     Exhibit B, Umbrella Policy, at Following Form Endorsement (Form: UMB GFF 05 11) (208).

70.     The CGL Primary Policy provides additional insured status to two categories of persons and organizations: (1) any person or organization for whom Peterson Construction is performing operations when Peterson Construction and such person or organization have agreed in a written contract or agreement that such person or organization be included as an additional insured on Peterson Construction's policy; and (2) any other person or organization Peterson Construction is required to include as an additional insured pursuant to such written contract or agreement.[43]

71.     The General Contract requires Peterson Construction to include the "Owner," McAllen Convention Center, as an additional insured under the CGL Primary Policy and Umbrella Policy but does not require Peterson Construction to include McAllen Strategic Group as an additional insured under those policies.[44]  As such, McAllen Strategic Group does not qualify as an additional insured under the CGL Primary Policy.

72.     Because additional insured status under the Umbrella Policy is predicated on additional insured status under the CGL Primary Policy[45], McAllen Strategic Group likewise does not qualify as an insured under the Umbrella Policy.

---

[43]     Exhibit A, CGL Primary Policy, at Commercial General Liability Coverage Form, Section II – Who Is An Insured, as amended by General Liability Extra Coverage Endorsement (Form: BIG GLECE 04 13) (104-105).

[44]     Exhibit F, General Contract which incorporates AIA A201-2007, paragraph 11, Insurance.  §11.1.4 of such paragraph provides: "The Contractor shall cause the commercial liability coverage required by the contract documents to include (1) the Owner, the Architect, and the Architect's consultants as additional insureds for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operation; and (2) the Owner, as an additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's completed operations." (459)

[45]     Exhibit B, Umbrella Policy, at Commercial Liability Umbrella Coverage Form, Section II – Who Is An Insured, 3 (177).

73.     Pursuant to 28 U.S.C. § 2201, ABIC seeks a declaration that it has no duty to defend or indemnify McAllen Strategic Group in connection with the Underlying Lawsuit under either the CGL Primary Policy or the Umbrella Policy because it is not an additional insured under the policies.

## COUNT IV:
## Declaratory Judgment on Indemnity Obligation to McAllen Defendants

74.     ABIC incorporates paragraphs 1 through 73 as if re-stated herein in *extenso*.

75.     The Umbrella Policy contains an Other Insurance clause which makes the insurance provided by the Umbrella Policy excess over and non-contributory with any other insurance, excepting only insurance specifically written as excess over the Umbrella Policy.[46]

76.     When the Umbrella Policy is excess, the Other Insurance clause limits the insurance available under the Umbrella Policy to ABIC's share of the ultimate net loss that exceeds the sum of (1) the total amount that all such other insurance would pay for the loss in the absence of the insurance provided under the Umbrella Policy and (2) the total of all deductible and self-insured amounts under all such other insurance.

77.     Upon information and belief, the McAllen Defendants carried insurance under the Hanover Policies that was in effect at the time of the accident involving Mr. Palacios and which provides coverage for the Underlying Lawsuit (the "McAllen Insurance").

78.     The Umbrella Policy is excess to the McAllen Insurance.

79.     To the extent the Court does not grant the relief requested by ABIC in Counts I through III of this Complaint, ABIC seeks a declaration pursuant to 28 U.S.C. § 2201 that ABIC's indemnity obligation under the Umbrella Policy in favor of the McAllen Defendants, if any, is

---

[46]     Exhibit B, Umbrella Policy, at Commercial Liability Umbrella Coverage Form, Section IV – Conditions, 5. Other Insurance (179).

limited to ABIC's share of the ultimate net loss that exceeds the sum of (1) the total amount that the McAllen Insurance would pay in connection with the Underlying Lawsuit in the absence of the Umbrella Policy and (2) the total of all deductible and self-insured amounts under the McAllen Insurance.

## COUNT V:
## Declaratory Judgment Regarding Punitive Damages Exclusion

80.     ABIC incorporates paragraphs 1 through 79 as if re-stated herein in *extenso*.

81.     The Umbrella Policy contains a punitive damages exclusion, which states that the insurance provided by the Umbrella Policy's Commercial Liability Umbrella Coverage Form "does not apply to … [a]ny claim, 'suit', cost or expense arising out of punitive or exemplary damages or any fines or penalties, in whatever form assessed, whether arising out of the acts or omissions of any insured, any employee of any insured, or any other person."[47]

82.     The Punitive Damages Exclusion is called to the attention of the policyholder through the Texas Disclosure to Policyholders, which advises that "[t]he insurance provided by this policy has been modified by endorsement **UMB PUND** which includes limitations or exclusions to your General Liability coverage including the exclusion of claims, 'suits', costs or expenses from punitive or exemplary damages, fines or penalties" and instructs: "[p]lease read this endorsement carefully."[48]

---

[47]     Exhibit B, Umbrella Policy, at Punitive Damages Exclusion (Form: UMB PUND 05 11) (211).

[48]     Exhibit B, Umbrella Policy, at Punitive Damages Exclusion (Form: UMB T PUND PH 06 15) (210).

83.     The *Palacios* Plaintiffs have asserted claims of gross negligence against Peterson Construction and the McAllen Defendants and claim they are "entitled to recover judgment against [Peterson Construction and the McAllen] Defendants for exemplary damages."[49]

84.     The Punitive Damages Exclusion bars from coverage under the Umbrella Policy any claim by or ultimate judgment rendered in favor of the *Palacios* Plaintiffs for exemplary damages in the Underlying Lawsuit.

85.     To the extent the Court does not grant all or part of the relief requested by ABIC in Counts I through IV of this Complaint, ABIC seeks a declaration pursuant to 28 U.S.C. § 2201 that ABIC is not required to indemnify Peterson Construction or the McAllen Defendants for that portion of any judgment rendered in the Underlying Lawsuit that constitutes an award of punitive or exemplary damages.

**BASIS FOR JOINDER OF
THE *PALACIOS* PLAINTIFFS AND THE *HANOVER* DEFENDANTS**

86.     The *Palacios* Plaintiffs have an interest in this declaratory judgment action because an adjudication of no coverage will affect what recovery the *Palacios* Plaintiffs may receive on a judgment, if any, rendered in the Underlying Lawsuit.

87.     The *Hanover* Defendants have an interest in this declaratory judgment action because an adjudication of no coverage or limited coverage as to ABIC with regard to the McAllen Defendants will affect what coverage the McAllen Defendants receives from ABIC if a judgment, if any, is rendered against the McAllen Defendants in the Underlying Lawsuit.

88.     ABIC has an interest in joining the *Palacios* Plaintiffs and the *Hanover* Defendants to this declaratory judgment action so the McAllen Defendants and the Hanover Defendants will

---

[49]     Exhibit C, Petition, at ¶ 20 (226).

be bound by the result, and ABIC will not be constrained to re-litigate coverage in a separate suit following the conclusion of the Underlying Lawsuit or this coverage litigation.

89.     Accordingly, ABIC joins the *Palacios* Plaintiffs and the *Hanover* Defendants as interested-party defendants and respectfully requests that the Court maintain them as parties to this suit.

## JURY DEMAND

90.     ABIC demands a trial by jury on all questions of fact, if any.

## PRAYER FOR RELIEF

**WHEREFORE**, American Builders Insurance Company prays that it be granted the following relief from this Court:

(1)     A declaration that American Builders Insurance Company has no duty under the CGL Primary Policy, policy number PKG 0101249 06, issued to Peterson Construction, Inc. as named insured to defend Peterson Construction, Inc., McAllen Strategic Group, LLC, or McAllen Convention Center Hotel, LLLP in connection with the Underlying Lawsuit asserted by Miguel Palacios and Maria Martinez;

(2)     A declaration that American Builders Insurance Company has no duty under the CGL Primary Policy, policy number PKG 0101249 06, issued to Peterson Construction, Inc. as named insured to indemnify Peterson Construction, Inc., McAllen Strategic Group, LLC, or McAllen Convention Center Hotel, LLLP in connection with the Underlying Lawsuit asserted by Miguel Palacios and Maria Martinez;

(3)     A declaration that American Builders Insurance Company has no duty under the Umbrella Policy, policy number UMB 0123705 05, issued to Peterson Construction, Inc. as named insured to defend Peterson Construction, Inc., McAllen Strategic Group, LLC, or McAllen Convention Center Hotel, LLLP in connection with the Underlying Lawsuit asserted by Miguel Palacios and Maria Martinez;

(4)     A declaration that American Builders Insurance Company has no duty under the Umbrella Policy, policy number UMB 0123705 05,  issued to Peterson Construction, Inc. as named insured to indemnify Peterson Construction, Inc., McAllen Strategic Group, LLC, or McAllen Convention Center Hotel, LLLP in connection with the Underlying Lawsuit asserted by Miguel Palacios and Maria Martinez;

(5)     A declaration that American Builders Insurance Company has no duty under the Umbrella Policy, policy number UMB 0123705 05,  issued to Peterson Construction, Inc. as named insured to indemnify Peterson Construction, Inc., McAllen Strategic Group, LLC, or McAllen Convention Center Hotel, LLLP for any punitive or exemplary damages awarded, if any, in connection with the Underlying Lawsuit to either Miguel Palacios or Maria Martinez;

(6)     A declaration that American Builders Insurance Company has no duty to defend or indemnify McAllen Strategic Group, LLC in connection with the Underlying Lawsuit under either the CGL Primary Policy or the Umbrella Policy because McAllen Strategic Group, LLC is not an additional insured under the policies;

(7)     A declaration that American Builders Insurance Company's indemnity obligation under the Umbrella Policy in favor of the McAllen Defendants, if any, is limited to American Builders Insurance Company's share of the ultimate net loss that exceeds the sum of (1) the total amount that the McAllen Insurance would pay in connection with the Underlying Lawsuit in the absence of the Umbrella Policy and (2) the total of all deductible and self-insured amounts under the McAllen Insurance and that the Hanover Policies are primary to ABIC's Umbrella Policy;

(8)     Costs of court; and

(9)     All other and further relief, at law or in equity, to which American Builders Insurance Company may be justly entitled.

> Respectfully submitted,
>
> **COZEN O'CONNOR**
>
> */s/ Alicia G. Curran*
> Alicia G. Curran
> Attorney-in-Charge
> Texas Bar No. 12587500
> acurran@cozen.com
> Alissa K. Christopher
> Texas Bar No. 11531020
> akchristopher@cozen.com
> 1717 Main Street, Suite 3100
> Dallas, Texas 75201-7335
> (214) 462-3000
> (214) 462-3299 (Fax)
>
> **ATTORNEYS FOR PLAINTIFF**
> **AMERICAN BUILDERS INSURANCE**
> **COMPANY**